```
FILED & JUDGMENT ENTERED
      Steven T. Salata

         Jul 02 2012

   Clerk, U.S. Bankruptcy Court
  Western District of North Carolina
```



*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

In re:

Matthew Alan Jenkins,
f/d/b/a Shephard Service Company,

Debtor.

Case Number: 12-50413

Chapter 7

## ORDER DENYING MOTION TO DISMISS DEBTOR'S
## CHAPTER 7 BANKRUPTCY PETITION FILED BY W. ANDREW LELIEVER

This matter came on for hearing on June 27, 2012 on the *Motion to Dismiss Debtor's Chapter 7 Bankruptcy Petition* (the "Motion") (D.E. 73) filed by W. Andrew LeLiever ("LeLiever"); the objection to that motion (the "Trustee's Objection") (D.E. 88) filed by James T. Ward, Sr., the trustee in the above-referenced bankruptcy case (the "Trustee"), through counsel; the objection (the "Federated Objection") (D.E. 95) filed by Federated Financial Corporation of America ("Federated"), though counsel; the objection (D.E. 97) filed by the United States Bankruptcy Administrator (the "Bankruptcy Administrator"); and the reply to the Trustee's Objection filed by LeLiever (D.E. 105). The Court, having reviewed the Motion, the objections thereto, the reply, and the record in this case, and having considered the arguments of counsel, finds and concludes as follows:

## FACTUAL BACKGROUND

1. The debtor, Matthew Allen Jenkins (the "Debtor"), filed his *pro se*, voluntary petition ("Petition") (D.E. 1) for relief pursuant to chapter 7 of the Bankruptcy Code on April 11, 2012 (the "Petition Date"), which case was assigned to the Trustee.

2. The Debtor's Petition reflected a bare-bones filing that listed only Federated as a creditor. The Petition was filed one day after entry of the *Order to Show Cause Why Matt Jenkins Should Not be Held in Contempt of Court and Order Forbidding Transfer of Defendant's Property* by The Honorable Donald W. Stephens in the case of *Federated Financial Corporation of America v. Matt Jenkins, individually and d/b/a Shephard Service Company*, Case No. 09-CVS-002084, pending in Wake County, North Carolina Superior Court.

3. Six days after the Petition Date, on April 17, 2012, the Debtor sent an email to the Court stating that he had reconsidered his bankruptcy filing and would be voluntarily dismissing his bankruptcy case the following day.

4. On April 20, 2012, the Court entered an Order directing that the Debtor's case not be dismissed for a failure to file his schedules or statement of financial affairs or for a failure to attend the meeting of creditors required by 11 U.S.C. § 341 (D.E. 27).

5. On April 24, 2012, the Debtor filed his bankruptcy schedules and statement of financial affairs (the "Bankruptcy Papers") in which he scheduled obligations to the Internal Revenue Service (the "IRS"), the North Carolina Department of Revenue (the "NC DOR"), and Federated (D.E. 33). The Debtor amended his Bankruptcy Papers on April 30, 2012, adding to Schedule F an obligation in the amount of $97,500.00 to LeLiever to Schedule F (D.E. 45).

6. On April 30, 2012, the Clerk of Court filed a *Notice of Presumed Abuse Under § 11 U.S.C. § 707(b)(2)* in the Debtor's case (D.E. 34).

7. On May 30, 2012, the Bankruptcy Administrator filed a statement pursuant to 11 U.S.C. § 707(b)(2) indicating that a motion to dismiss the Debtor's case was not appropriate in this case, notwithstanding that a presumption of abuse had arisen (D.E. 61).

8. On June 5, 2012, LeLiever filed the Motion requesting that the Court dismiss the Debtor's bankruptcy case "as a matter of law" based on the Debtor's "failure of the means test." Motion at 2.

9. On June 18, 2012, the Trustee's Objection was filed. The Federated Objection followed on June 19, 2012. On June 20, 2012, the Bankruptcy Administrator joined in the Trustee's Objection. On June 25, 2012, LeLiever filed his reply.

## **DISCUSSION**

10. The Court has determined that the law does not require that the Debtor's case be dismissed due to the Debtor's "failure" of the means test. The means test set forth in 11 U.S.C. § 707(b)(2) reflects a statutory formula that takes a debtor's monthly income and certain expenses, such as the cost of housing, utilities, health insurance, food and clothing, into account in determining whether the debtor has the ability to repay his debts. *Calhoun v. U.S. Trustee*, 650 F.3d 338, 340-41 (4th Cir. 2011). If the debtor's income exceeds the "highest median family income of the applicable State for a family of the same number or fewer individuals," application of the means test creates a rebuttable presumption of abuse. 11 U.S.C. § 707(b)(2), (6). Thus the means test provides a mechanism by which the court may "presume" abuse, but it is not conclusive, and the presumption of abuse is rebuttable. *Calhoun*, 650 F.3d at 342. Generally speaking, a motion to dismiss based on the presumption of abuse is filed when it appears that the debtor will be able to satisfy his creditors at least in part.

11.    Section 707(b)(1) does not mandate dismissal in all instances where a debtor has failed the means test but either does not qualify for conversion to chapter 13 or consent to conversion to either chapter 11 or 13. Instead, the text of Section 707(b)(1) permits bankruptcy courts to exercise discretion, providing, in part, that:

> After notice and hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or a party in interest **may dismiss** a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

§ 707(b)(1) (emphasis added). Although some bankruptcy courts have held that conversion or dismissal pursuant to Section 707(a)(1) is mandatory when the presumption of abuse under Section 707(b)(2) has arisen, other courts have disagreed based on the plain meaning of the statutory text. *See, e.g., In re Mravik*, 399 B.R. 202, 209 (Bankr. E.D. Wis. 2008).

12.    Courts are instructed to construe statutes based on the plain meaning of the statutory text. *In re Sunterra Corp.*, 361 F.3d 257, 265 (4th Cir. 2004) (citations omitted) (setting out the plain meaning rule). Section 707(b)(1) clearly states that bankruptcy courts "may dismiss" a case based on the results of a means test; it does not affirmatively require that bankruptcy courts "shall dismiss" the debtor's case in each and every instance where the presumption of abuse is a factor. § 707(b)(1). Based on the plain meaning of the text of Section 707(b)(1), the Court concludes that the use of the word "may" as opposed to "shall" provides that conversion or dismissal of a case is discretionary.

13.    In addition, some courts, including another bankruptcy judge in this District, have cited to an "absurd result exception" in denying a motion to dismiss or convert a case in which the presumption of abuse is a factor. *See, e.g., In re Siler*, 426 B.R. 167 (Bankr. W.D.N.C. 2010) (Whitley, J.). The "absurd result exception" to the plain meaning rule is applicable in instances

4

where "the literal application of the statutory language at issues results in an outcome that can truly be characterized as absurd." *Sunterra.*, 361 F.3d at 265 (citation omitted).

14.    An illustration of the absurd-result exception may be found in the decision entered in another case in this District, *In re Carrie Beth Smith*, Case No. 08-31131, on October 6, 2008.[1] The *Smith* debtor was unemployed but had received a lump sum severance payment and vacation pay pre-petition that caused her to "fail" the means test. *Smith* at 4. The court in *Smith* noted that it had two choices: to deny the motion to dismiss and allow the case to continue, or to grant the motion, in which case the debtor was likely to re-file later. *Id.* at 6-7. The court concluded that dismissal would result in a waste of judicial resources and, therefore, denied the motion to dismiss. *Id.; see also Siler*, 426 B.R. at 177 (declining to dismiss or convert the debtor's case based on the absurd result exception).

15.    In this case, the Debtor's Bankruptcy Papers indicate that he is not employed and has no regular income. Accordingly, the Debtor does not qualify for chapter 13. *See* 11 U.S.C. § 109(e). Further, there is no indication in the Debtor's Bankruptcy Papers that a reorganization pursuant to chapter 11 would be appropriate or even possible. For these reasons, as well as the fact that the Debtor has not consented, conversion of the Debtor's case is not an option.

16.    The Bankruptcy Papers appear to be incomplete, but the only valuable assets that the Debtor disclosed are litigation claims and judgments. Pre-petition, the Debtor had a practice of suing debt buyers, debt collectors, and in the instance of Federated, a judgment creditor, pursuant to the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, and other similar statutes. Proceeds from those lawsuits, listed in the Bankruptcy Papers as totaling $235,278 in the two years before the Petition Date, were the reason that the Debtor "failed" the

---

[1] The *Smith* decision is available on the Bankruptcy Court's website at: http://www.ncwb.uscourts.gov/chambers/opinions/images/docs1619/ncwb.3.8.bk.31131.6071083.0.pdf.

5

means test. However, there is no indication in the Bankruptcy Papers that the Debtor has any portion of the lawsuit proceeds that he has collected or other sources of funds with which to satisfy creditors were his case to be dismissed.

17. Although the Motion was brought by LeLiever as a creditor of the Debtor's, it was opposed by another creditor, Federated. The Bankruptcy Administrator declined to ask the Court to dismiss or convert the Debtor's case despite the fact that the presumption of abuse arose based on the means test and, in fact, opposed the Motion. The Court is persuaded that the arguments in the Trustee's Objection, the Federated Objection, and the objection by the Bankruptcy Administrator state a case for this Court's exercise of discretion in denying the Motion. The Trustee has been active in seeking recoveries for the bankruptcy estate, and it appears that the best interests of the creditor body would be for the Debtor's case to proceed in chapter 7.

18. In sum, the facts presented in this case call for the Court to exercise its discretion to deny the Motion. Further support for not granting the requested relief lies in the fact that dismissing the Debtor's case would reflect the absurd result of dismissal of the chapter 7 case of an apparently insolvent, unemployed debtor.

IT IS, THEREFORE, ORDERED that the Motion is DENIED.

This Order has been signed
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.

United States Bankruptcy Court